# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| A.F., on behalf of J.F., and A.R., on behalf of B.R., | |
| Plaintiffs, | Case No. 2:24-cv-01014-JRG-RSP |
| v. | |
| CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; ALPHABET INC., | |
| Defendants. | |

## DEFENDANT CHARACTER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION PURSUANT TO 9 U.S.C. §§ 3–4 AND FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(3)

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.    INTRODUCTION .................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.    J.F. and B.R. Affirmatively Agreed to C.AI's TOS Upon Creating Their Accounts to Use C.AI's Service ...............................................1

    B.    J.F. and B.R. Agreed to Arbitrate All Disputes Arising from their Use of C.AI's Services ...........................................................................5

    C.    J.F. and B.R. Used, and Intend to Continue Using, C.AI's Service ......................6

    D.    Plaintiffs' Claims on Behalf of J.F. and B.R. Arise From Their Use of C.AI..........................................................................................6

III.    ARGUMENT .......................................................................................................7

    A.    Legal Standard ...........................................................................................7

    B.    Plaintiffs' Claims Must Be Individually Arbitrated.................................................7

        1.    J.F. and B.R. Formed Valid Arbitration Agreements With C.AI ...............8

            (a)    J.F. and B.R. Received Notice of and Assented to the TOS...........8

            (b)    J.F. and B.R. Received Conspicuous Notice of the Agreement ......................................................................9

            (c)    Plaintiffs, As J.F.'s and B.R.'s Representatives, Must Arbitrate J.F.'s and B.R.'s Claims Asserted On Their Behalf ...................................................................................10

        2.    The Agreements Delegate All Threshold Issues To the Arbitrator ..........11

    C.    Any Lack of Capacity or Disaffirmation Defense Asserted By Plaintiffs Must Be Individually Arbitrated.................................................11

    D.    Were the Court to Reach the Issue of Disaffirmation Despite the Delegation Clause, It Should Reject the Defense and Compel Arbitration ..........13

    E.    A Stay Pending Arbitration (or Any Appeal) Is Appropriate ...............................15

IV.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Arnold v. Homeaway, Inc.*,
   890 F.3d 546 (5th Cir. 2018) ................................................................................11

*Baker v. adidas Am., Inc.*,
   2008 WL 11429938 (E.D.N.C. Mar. 5, 2008) ......................................................14

*Becker v. Delek US Energy, Inc.*,
   39 F.4th 351 (6th Cir. 2022) ................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ............................................................................................12

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
   621 F. App'x 488 (9th Cir. 2015) ........................................................................14

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023) ............................................................................................15

*Courtright v. Epic Games, Inc.*,
   2025 WL 558560 (W.D. Mo. Feb. 13, 2025) ......................................................15

*Cubria v. Uber Techs., Inc.*,
   242 F. Supp. 3d 541 (W.D. Tex. 2017) ................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ..............................................................................................7

*Dunn v. Activision Blizzard, Inc.*,
   2024 WL 4652194 (E.D. Ark. Oct. 31, 2024) ....................................................13

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
   885 F. Supp. 2d 894 (S.D. Ill. 2012) ..................................................................14

*Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*,
   953 F.3d 348 (5th Cir. 2020) ................................................................................8

*Edwards v. Doordash, Inc.*,
   888 F.3d 738 (5th Cir. 2018) .........................................................................7, 13

*Ghazizadeh v. Coursera, Inc.*,
   737 F. Supp. 3d 911 (N.D. Cal. 2024) ..................................................................9

*Harden v. Am. Airlines*,
   178 F.R.D. 583 (M.D. Ala. 1998) ......................................................................14

*Harvey v. Joyce*,
 199 F.3d 790 (5th Cir. 2000) ................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019).............................................................................11

*Hines v. Stamos*,
 111 F.4th 551 (5th Cir. 2024) ..............................................................15

*Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*,
 783 F.2d 1234 (5th Cir. 1986) ...............................................................8

*J.A. ex rel. Allen v. Microsoft Corp.*,
 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021)........................................14

*Johnson v. Activision Blizzard, Inc.*,
 2025 WL 522589 (E.D. Ark. Feb. 18, 2025) ..........................................13

*K.F.C. v. Snap Inc.*,
 29 F.4th 835 (7th Cir. 2022) ..........................................................12, 13

*KPMG LLP v. Cocchi*,
 565 U.S. 18 (2011)...............................................................................7

*Kubala v. Supreme Prod. Servs., Inc.*,
 830 F.3d 199 (5th Cir. 2016) .................................................................7

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017).....................................................................9

*N.A. v. Nintendo of Am. Inc.*,
 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ........................................12

*Orellana v. Roblox Corp.*,
 2025 WL 694428 (M.D. Fla. Mar. 4, 2025) .......................................12, 15

*Paster v. Putney Student Travel, Inc.*,
 1999 WL 1074120 (C.D. Cal. June 9, 1999) ..........................................14

*Petri v. Kestrel Oil & Gas Props., L.P.*,
 2013 WL 265973 (S.D. Tex. Jan. 17, 2013) ...........................................10

*Phillips v. Neutron Holdings, Inc.*,
 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019)..........................................8, 9

*Primerica Life Insurance Co. v. Brown*,
 304 F.3d 469 (5th Cir. 2002) ...............................................................13

*RealPage, Inc. v. EPS, Inc.*,
    560 F. Supp. 2d 539 (E.D. Tex. 2007) ...................................................................8

*Recursion Software, Inc. v. Interactive Intel., Inc.*,
    425 F. Supp. 2d 756 (N.D. Tex. 2006) ...................................................................8

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ...................................................................................................12

*S.T.G. ex rel. Garcia v. Epic Games, Inc.*,
    2024 WL 4375782 (S.D. Cal. Oct. 2, 2024) ....................................................10, 13

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) .................................................................................................15

*In re StockX Customer Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021) ..............................................................................12, 13

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
    2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ......................................................8

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) ...................................................................9

*Walker v. Neutron Holdings, Inc.*,
    2020 WL 703268 (W.D. Tex. Feb. 11, 2020) .........................................................9

*Webb v. Investacorp, Inc.*,
    89 F.3d 252 (5th Cir. 1996) ....................................................................................8

*Williams-Diggins v. Experian Info. Sols., Inc.*,
    2024 WL 3508671 (N.D. Ohio July 23, 2024) ....................................................11

*Yates v. Experian Info. Sols., Inc.*,
    2023 WL 4747386 (S.D. Tex. July 25, 2023) ......................................................11

STATE CASES

*All. Milling Co. v. Eaton*,
    25 S.W. 614 (Tex. 1894) ..........................................................................................8

*Austin Nursing Ctr., Inc. v. Lovato*,
    171 S.W.3d 845 (Tex. 2005) ..................................................................................10

*Babu v. Petersen*,
    48 P.2d 689 (Cal. 1935) .....................................................................................14, 15

*Byrd v. Woodruff*,
   891 S.W.2d 689 (Tex. App.—Dallas 1994, writ denied, dism'd by agr., and
   withdrawn) .................................................................................................................10

*Dairyland Cnty. Mut. Ins. Co. of Tex. v. Roman*,
   498 S.W.2d 154 (Tex. 1973) .................................................................................12, 14, 15

*Gracia v. RC Cola-7-UP Bottling Co.*,
   667 S.W.2d 517 (Tex. 1984) ...................................................................................10

*Holland v. Universal Underwriters Ins. Co.*,
   270 Cal. App. 2d 417 (1969) .................................................................................14

*HomeAdvisor, Inc. v. Waddell*,
   2020 WL 2988565 (Tex. App.—Dallas June 4, 2020, no pet.) ..........................................8, 10

*In re Jindal Saw Ltd.*,
   264 S.W.3d 755 (Tex. App.—Houston [1st Dist.] 2008, subsequent
   mandamus proceeding, 289 S.W.3d 827 (Tex. 2009)) ............................................10

## FEDERAL STATUTES

9 U.S.C. § 3 ...................................................................................................................1, 15

9 U.S.C. § 4 ...........................................................................................................................1

9 U.S.C. § 16 ......................................................................................................................15

## FEDERAL AND LOCAL RULES

Fed. R. Civ. P. 12(b) .............................................................................................................1

Local Rule CV-7(g) ............................................................................................................15

## STATE STATUTES

Cal. Fam. Code § 6700 ......................................................................................................12

Defendant Character Technologies, Inc. ("C.AI") moves to compel individual arbitrations and to stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).

## I.    INTRODUCTION

Plaintiffs A.F. and A.R. bring claims on behalf of their minor children, J.F. and B.R., alleging that J.F. and B.R. were harmed by the content of their conversations with AI chatbots on C.AI's service. C.AI cares deeply about the well-being of its users. But Plaintiffs' claims are without legal merit and—to the point of this motion—must be arbitrated.

All users must agree to C.AI's Terms of Service ("TOS" or "Terms") to access or use its service. J.F. and B.R. each affirmatively agreed to the Terms when they signed up for accounts. They each were presented with a conspicuous notice and affirmatively acknowledged that, by signing up, they were agreeing to C.AI's Terms. By so doing, J.F. and B.R. agreed to arbitrate all disputes arising from their use of C.AI's service, and also agreed that "[a]ll issues are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability" of the arbitration agreement. Declaration of Andy Nahman ("Nahman Decl.") Ex. C at 5, Ex. E at 5. Those agreements encompass the instant claims—brought by J.F.'s and B.R.'s parents in a representative capacity on their behalf, alleging harms from use of the service—and any threshold arbitrability issues Plaintiffs may raise.

The Court should compel arbitration and stay further proceedings in this action.

## II.    BACKGROUND

### A.    J.F. and B.R. Affirmatively Agreed to C.AI's TOS Upon Creating Their Accounts to Use C.AI's Service

C.AI offers a platform for users to engage in interactive conversations with generative AI chatbots called "[C]haracters." Compl. ¶ 216; Nahman Decl. ¶ 2. Characters may be based on

historical or fictional figures, serve a functional role (such as an "Interviewer" for interview practice), and more.  Compl. ¶¶ 217–18.  Users can create custom Characters and share them with others.  *Id.* ¶ 219.  Users principally engage with Characters through text conversations.  *E.g.*, *id.* ¶ 230.  Users engage in these conversations through C.AI's website or, since May 23, 2023, a mobile app.  Nahman Decl. ¶¶ 3–5; *see also* Compl. ¶ 231.

However users choose to access C.AI's service, they must agree to the TOS to access or use the service.  Every version of the TOS since C.AI's public launch has conspicuously stated: "By accessing [and/]or using the Services, you're agreeing to these Terms.  If you don't understand or agree to these Terms, please don't use the Services."  Nahman Decl. Exs. A–E.

Users must also affirmatively agree to C.AI's TOS when creating an account—as both J.F. and B.R. did.  *See* Nahman Decl. ¶¶ 11–15.  Based on information provided by their counsel, and C.AI's investigation, J.F. created an account on July 1, 2023, and B.R. created an account on August 19, 2024.  Nahman Decl. ¶¶ 8–10.  Counsel for J.F. and B.R. have confirmed these are the accounts at issue in the Complaint.[1]  Declaration of Stephanie G. Herrera ¶¶ 2, 4.  In creating these accounts:  B.R. did not provide a name; and J.F. provided a false name and used iCloud Private Relay to disguise his email address.  Nahman Decl. ¶¶ 9–10.

On July 1, 2023, when J.F. created an account, a user signing up for an account on either the mobile app or the website was presented with a link to the TOS (as well as C.AI's Privacy Policy) and had to check a box indicating they understood and agreed to those policies before

---

[1] Plaintiffs allege that J.F. "downloaded and started using C.AI in or around April 2023" and that "B.R. downloaded [C.AI] on her own mobile device … [and] used C.AI for almost two years" up to October 2024.  Compl. ¶¶ 46, 120.  These allegations do not align with the accounts that Plaintiffs' counsel has confirmed are at issue or with the public launch date of C.AI's mobile app, Nahman Decl. ¶ 5.  Whatever the reason for such discrepancies (including potential use prior to creating accounts or other undisclosed accounts), J.F. and B.R. each created accounts and agreed to C.AI's TOS at least as of July 1, 2023, and August 19, 2024, respectively.

creating an account.  Nahman Decl. ¶¶ 12–13.  As shown below, the Terms were linked in blue font that stood out, directly above the checkbox users had to click in order to set up an account:



*Figure 1: Mobile app account-creation flow on July 1, 2023*



*Figure 2: Website account-creation flow on July 1, 2023*

*Id.*

On August 19, 2024, when B.R. created an account, the account-creation process was similar.  A user was presented with the TOS and notified that, by creating an account, they agree to the TOS.  *Id.* ¶¶ 14–15.  This notice contained a link to the Terms, in blue or bolded text, directly above or below the "Join" or "Continue" button a user had to click to set up an account:



*Figure 3: Mobile app account-creation flow on August 19, 2024*



*Figure 4: Website account-creation flow on August 19, 2024*

*Id.*

Plaintiffs do not deny that J.F. and B.R. agreed to the TOS when creating their accounts, or allege any deficiencies in these account-creation flows.  Rather, the Complaint acknowledges

J.F. and B.R. may have entered into agreements with C.AI that their parents purport to disaffirm on their behalf.  Compl. ¶¶ 14–15, 18–19.

      **B.**      **J.F. and B.R. Agreed to Arbitrate All Disputes Arising from their Use of C.AI's Services**

Every version of the TOS since C.AI's public launch, including the versions to which J.F. and B.R. agreed when creating their accounts, has included a conspicuous agreement to arbitrate all disputes arising from use of the service ("Arbitration Agreement").  Nahman Decl. Exs. A–E.

C.AI has always notified users of the Arbitration Agreement near the top of the Terms. The TOS to which J.F. agreed states:

> Note: these Terms contain an arbitration clause and class action waiver.  By agreeing to these Terms, you agree (a) to resolve all disputes with us through binding individual arbitration, which means that you waive any right to have those disputes decided by a judge or jury, and (b) that you waive your right to participate in class actions, class arbitrations, or representative actions.

*Id.*, Ex. C at 1.  The TOS to which B.R. agreed is substantively the same:

> NOTE: THESE TERMS CONTAIN AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER.  By agreeing to these Terms, you agree to resolve all disputes with us through binding individual arbitration.  That means you also waive any right to have those disputes decided by a judge or jury, and you waive your right to participate in class actions, class arbitrations, or representative actions.

*Id.*, Ex. E at 1.

The Arbitration Agreement itself appears in the Terms under the heading "Dispute Resolution By Binding Arbitration."  *Id.*, Ex. C at 4, Ex. E at 4.  It begins by advising users that "[t]his section affects your rights so please read it carefully."  *Id.*  The Arbitration Agreement in the TOS versions to which J.F. and B.R. agreed further states:

> You agree that any and all disputes or claims that have arisen or may arise between you and [Character.AI], whether arising out of or relating to these Terms (including any alleged breach thereof), the Website or Services, any aspect of the relationship or transactions between us, shall be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small

> claims court, if your claims qualify.  Further, this Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, and such agencies can, if the law allows, seek relief against us on your behalf.  You agree that, by entering into these Terms, you and [Character.AI] are each waiving the right to a trial by jury or to participate in a class action.  Your rights will be determined by a neutral arbitrator, not a judge or jury.

*Id.*  Among other terms, the Arbitration Agreements to which J.F. and B.R. agreed require arbitration under the JAMS Streamlined Arbitration Rules and Procedures; provide that "[a]ll issues are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement"; and specify that "[t]he Federal Arbitration Act governs [their] interpretation and enforcement."  *Id.*, Ex. C at 4–5, Ex. E at 4–5.  The substance of these provisions has been the same since C.AI's public launch.  *Id.*, Exs. A–E.

## C.    J.F. and B.R. Used, and Intend to Continue Using, C.AI's Service

J.F. and B.R. used C.AI's services after agreeing to the TOS and each intend to continue using C.AI's services.  The Complaint alleges that J.F. has "made it clear that he will access C.AI the first chance he gets," Compl. ¶ 114, and, similarly, that B.R. "seek[s] out C.AI at every opportunity," *id.* ¶ 121.  And B.R.'s account at issue has been accessed even since the filing of the Complaint—as recently as December 31, 2024.  Nahman Decl. ¶ 10.

## D.    Plaintiffs' Claims on Behalf of J.F. and B.R. Arise From Their Use of C.AI

Plaintiffs A.F. and A.R. are J.F.'s mother and B.R.'s mother, respectively.  Compl. ¶¶ 12, 58, 118.  On December 9, 2024, Plaintiffs filed this action in a representative capacity on behalf of J.F. and B.R.  *Id.* ¶¶ 13, 17.  Plaintiffs assert nine product liability, personal tort, deceptive trade practices, and other claims against C.AI.  *Id.* ¶¶ 374–400, 404–67.  At core, Plaintiffs generally allege J.F. and B.R. were harmed by the content of their conversations with Characters and specifically challenge certain messages allegedly received by J.F.  *See id.* ¶¶ 64–105, 122–23.  The Complaint does not identify a single message B.R. allegedly received or was harmed by.

### III.    ARGUMENT

J.F. and B.R. each agreed to arbitrate their claims against C.AI; agreed that any disputes regarding scope, arbitrability, or enforceability would be delegated to the arbitrator; and agreed that the FAA would govern those agreements.  Straightforward application of the relevant law requires the Court to compel individual arbitrations.  Any defenses to arbitration, including any purported disaffirmation, have been delegated to the arbitrator.  Were the Court to reach disaffirmation despite the delegation clause, neither J.F. nor B.R. has effectively disaffirmed.

### A.    Legal Standard

The FAA governs "interpretation and enforcement" of the Arbitration Agreement. Nahman Decl. Ex. C at 4, Ex. E at 4.  The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution," *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (cleaned up), and requires that courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Courts decide only: (1) "whether the parties entered into any arbitration agreement"; and (2) "whether [the] claim [at issue] is covered by the arbitration agreement."  *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis omitted).  Where, as here, the parties delegated gateway issues to the arbitrator, courts decide only whether an arbitration agreement exists and "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."  *Id.* at 202.  If a delegation clause exists, "absent a challenge to the delegation clause itself, [courts] will consider that clause to be valid and compel arbitration." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018).

### B.    Plaintiffs' Claims Must Be Individually Arbitrated

C.AI easily satisfies its burden of demonstrating that arbitration agreements with valid delegation clauses exist.  That ends the inquiry and requires arbitration of Plaintiffs' claims.

1.    **J.F. and B.R. Formed Valid Arbitration Agreements With C.AI**

To determine whether an arbitration agreement has been formed, federal courts apply state-law contract formation principles. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).[2]  To form a contract under Texas law, "the parties must manifest their mutual assent to be bound," "directly, as by the written or spoken word, or indirectly, through one's actions or conduct." *Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007) (citing *All. Milling Co. v. Eaton*, 25 S.W. 614, 616 (Tex. 1894)).  Where an arbitration agreement was formed online, courts consider whether (1) "notice of the arbitration provision was reasonably conspicuous," and (2) "manifestation of assent is unambiguous as a matter of law." *HomeAdvisor, Inc. v. Waddell*, 2020 WL 2988565, at *4 (Tex. App.—Dallas June 4, 2020, no pet.).  Applying these principles here, valid agreements were formed with J.F. and B.R.

(a)    *J.F. and B.R. Received Notice of and Assented to the TOS*

Users creating C.AI accounts receive ample notice of the TOS and must assent to them. When J.F. created an account in 2023, whether on C.AI's website or mobile app, he was presented with a link to the TOS and had to check a box indicating he agreed to the TOS to create an account.  Nahman Decl. ¶¶ 12–13.  Courts routinely find that such "clickwrap" agreements—where the consumer must check a box to accept terms—demonstrate affirmative assent and are enforceable. *E.g.*, *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 781–82

---

[2] Although California law governs C.AI's TOS, Nahman Decl. Ex. C at 6, Ex. E at 6, Texas law likely governs the threshold contract formation issue. *See Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020) ("choice-of-law provision has force only if the parties validly formed a contract"); *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1240 (5th Cir. 1986) (federal court sitting in diversity applies forum state's substantive law).  Regardless, California and Texas contract law are "substantially the same." *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *3 n.1 (N.D. Tex. Oct. 2, 2019).

(N.D. Tex. 2006) (collecting cases); *accord Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

When B.R. created an account in 2024, whether on C.AI's website or mobile app, she was presented with a conspicuous link to the TOS, directly above or below a "Join" or "Continue" button, and was informed that by continuing to create an account and/or joining C.AI she was agreeing to the TOS. Nahman Decl. ¶¶ 14–15. Courts likewise routinely enforce online agreements formed through conspicuous presentation of terms in close proximity to a sign-up button. *E.g.*, *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *4–5 (N.D. Tex. Oct. 2, 2019) (enforcing an arbitration clause in a user agreement under Texas law, where a link to the agreement was bolded "in close proximity" to sign-up button); *Walker v. Neutron Holdings, Inc.*, 2020 WL 703268, at *3–4 (W.D. Tex. Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020) (same); *see also Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 929 (N.D. Cal. 2024) (bolded hyperlink to TOS directly below a "Sign Up" button was "reasonably conspicuous"); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017) (similar).

The Complaint does not allege otherwise. Instead, the Complaint acknowledges J.F. and B.R. each may have entered into agreements with C.AI.[3] *See* Compl. ¶¶ 14–15, 18–19.

> (b)    *J.F. and B.R. Received Conspicuous Notice of the Agreement*

C.AI's TOS provided J.F. and B.R. conspicuous notice that it contains a binding arbitration agreement. Using straightforward language prominently preceded by the word

---

[3] Even if J.F. and B.R. used C.AI's service before creating accounts, they each agreed to the TOS when they created accounts and thereby agreed to arbitrate "all disputes or claims that *have arisen* or may arise between" them and C.AI. Nahman Decl. Ex. C at 4, Ex. E at 4 (emphasis added); *cf. Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878 (N.D. Cal. 2018) (enforcing arbitration clause that, by its plain language, applied to claims that had already arisen). In any event, arbitrability issues, including as to scope, have been delegated to arbitration. *See infra*.

"Note," C.AI notifies users at the top of the TOS: "these Terms contain an arbitration clause and class action waiver." Nahman Decl. Ex. C at 1, Ex. E at 1. The notice further states that, by agreeing to the Terms, users agree to "resolve all disputes with [C.AI] through binding individual arbitration" and "waive any right to have those disputes decided by a judge or jury." *Id.* The Arbitration Agreement itself appears in the TOS under the heading, "Dispute Resolution By Binding Arbitration." *Id.*, Ex. C at 4, Ex. E at 4. "Similar presentations have consistently been found to be conspicuous." *HomeAdvisor*, 2020 WL 2988565, at *2–4 (collecting cases).

<div style="text-align:center">

(c)    *Plaintiffs, As J.F.'s and B.R.'s Representatives, Must Arbitrate J.F.'s and B.R.'s Claims Asserted On Their Behalf*

</div>

That Plaintiffs are J.F.'s and B.R.'s parents, not J.F. and B.R. themselves, makes no difference to the Court's analysis of contract formation. As minors, J.F. and B.R. are "'unable to sue or be sued in their individual capacities'" and "'are required to appear in court through a legal guardian, a "next friend," or a guardian ad litem.'" *Petri v. Kestrel Oil & Gas Props., L.P.*, 2013 WL 265973, at *5 (S.D. Tex. Jan. 17, 2013) (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005)). Because of this rule, A.F. (J.F.'s parent) and A.R. (B.R.'s parent) are nominal plaintiffs only, bringing this action for the benefit of J.F. and B.R. Compl. ¶¶ 13, 17. A.F. and A.R. are thus "present in a representative capacity only, and [J.F. and B.R.] remain[] the real part[ies] in interest." *See Byrd v. Woodruff*, 891 S.W.2d 689, 704 (Tex. App.—Dallas 1994, writ denied, dism'd by agr., and withdrawn) (citing *Gracia v. RC Cola-7-UP Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)).

Because J.F. and B.R., the real parties in interest, assented to the Arbitration Agreement, Plaintiffs are bound to arbitrate J.F.'s and B.R.'s claims in this action. *See S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 2024 WL 4375782, at *8 (S.D. Cal. Oct. 2, 2024) (compelling arbitration with respect to minors' claims brought through guardian); *see also In re Jindal Saw Ltd.*, 264

<div style="text-align:center">

10

</div>

S.W.3d 755, 766 (Tex. App.—Houston [1st Dist.] 2008, subsequent mandamus proceeding, 289 S.W.3d 827 (Tex. 2009)) (representative bringing survival claims on behalf of a decedent was bound to an arbitration agreement to which the decedent had assented).

### 2.    The Agreements Delegate All Threshold Issues To the Arbitrator

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018). That is what the parties did here. The Arbitration Agreement includes a broad delegation provision: "All issues are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Nahman Decl. Ex. C at 5, Ex. E at 5. This type of provision is "clear and unmistakable evidence" that the parties intended the arbitrator to decide arbitrability and enforceability issues.[4] *Yates v. Experian Info. Sols., Inc.*, 2023 WL 4747386, at *3 (S.D. Tex. July 25, 2023), *report and recomm. adopted*, 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023); *see also Williams-Diggins v. Experian Info. Sols., Inc.*, 2024 WL 3508671, at *3 (N.D. Ohio July 23, 2024) (collecting cases). As such, the Court "possesses no power to decide [any] arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019).

### C.    Any Lack of Capacity or Disaffirmation Defense Asserted By Plaintiffs Must Be Individually Arbitrated

Plaintiffs may seek to avoid arbitration by arguing that J.F. and B.R. lacked the capacity to consent to the TOS, or that their parents have disaffirmed the TOS on their behalf. Compl. ¶¶ 14–15, 18–19. To the extent Plaintiffs raise such arguments in their opposition, they fail. The law is clear that where, as here, the parties agree to delegate threshold issues to an arbitrator, *the*

---

[4] This includes any argument that J.F.'s and B.R.'s agreements are "void under applicable law as unconscionable and/or against public policy." Compl. ¶¶ 14, 18.

*arbitrator* must decide defenses to arbitration, including as to capacity and disaffirmation.

"Youth" is a defense to arbitrability, not an issue of contract formation. The contracts of minors are not void, but rather are *voidable* at their election. *See Dairyland Cnty. Mut. Ins. Co. of Tex. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973); *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at *4 (N.D. Cal. Dec. 11, 2023) (citing Cal. Fam. Code § 6700). "[Y]outh" is thus a "defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022).

That Plaintiffs purport to disaffirm the arbitration agreements on their children's behalf makes no difference; that too is an issue for the arbitrator. "[S]ubstantive federal arbitration law" determines who (court or arbitrator) decides a challenge to the validity or enforceability of an arbitration agreement governed by the FAA. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *K.F.C.*, 29 F.4th at 837–38. Federal law is clear that courts must enforce a delegation clause unless a party "challenge[s] the delegation provision specifically," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)—*i.e.*, challenges the clause "on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole," *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022).

For this reason, every Court of Appeals to address the issue has held that age-related capacity and disaffirmation challenges must be resolved by the arbitrator—because these defenses go to validity and enforceability (not contract formation) and challenge the entire agreement (not the delegation clause specifically). *K.F.C.*, 29 F.4th at 837–38; *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883 (6th Cir. 2021). District courts around the country are in accord, including in cases involving similar allegations of "addiction" and other harms to minors from interactive media. *See, e.g.*, *Orellana v. Roblox Corp.*, 2025 WL 694428,

at *5 (M.D. Fla. Mar. 4, 2025) (enforcing delegation clause for disaffirmation defense in video

game addiction case); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 522589, at *4 (E.D. Ark.

Feb. 18, 2025) (same); *Dunn v. Activision Blizzard, Inc.*, 2024 WL 4652194, at *4 (E.D. Ark.

Oct. 31, 2024) (same); *S.T.G.*, 2024 WL 4375782, at *5–6 (enforcing delegation clause in class

action alleging harm to minors from playing Fortnite). For the same reasons, the Fifth Circuit

held in *Primerica Life Insurance Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002), that the

defense of lack of mental capacity must be decided by an arbitrator. The reasoning of *Primerica*

applies with equal force here; there is no basis for distinguishing age-related capacity defenses.

These authorities require an arbitrator to decide any disaffirmation defense here. The

Complaint is clear that Plaintiffs are purporting to disaffirm "any and all alleged 'agreements'"

into which J.F. and B.R. entered relating to their use of C.AI. Compl. ¶¶ 15, 19. Because

Plaintiffs' disaffirmation arguments challenge J.F.'s and B.R.'s "agreements" as a whole, not the

delegation clause specifically, those arguments must be arbitrated. *See K.F.C.*, 29 F.4th at 837–

38; *StockX*, 19 F.4th at 884–86; *see also Primerica*, 304 F.3d at 472; *Edwards*, 888 F.3d at 744

("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the

delegation clause itself, we will consider that clause to be valid and compel arbitration.").

### D.    Were the Court to Reach the Issue of Disaffirmation Despite the Delegation Clause, It Should Reject the Defense and Compel Arbitration

Even if the Court were to reach the issue of disaffirmation despite the delegation clause,

the outcome would not change: Arbitration is required because J.F. and B.R. already accepted,

and still seek to retain, the benefits of their agreements with C.AI through use of the service.

The Complaint makes clear that J.F. and B.R. accepted the benefits of their agreements.

It alleges that J.F. and B.R. each used C.AI's services—B.R. allegedly for "almost two years."

Compl. ¶¶ 46, 120. J.F. and B.R. cannot accept the benefits of their agreements with C.AI by

using the service, "then seek to void [those agreements] in an attempt to escape the consequences of a clause" with which their parents disagree. *See Paster v. Putney Student Travel, Inc.*, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999); *Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (minor could not void contract after accepting its benefits).

In addition to past receipt of benefits, J.F. and B.R. intend to continue benefiting from their agreements with C.AI. B.R.'s account has been accessed since the Complaint was filed. Nahman Decl. ¶ 10. Given that J.F. and B.R. did not identify themselves when creating accounts (and at least J.F. took steps to mask his identity), it is possible they have created or used other accounts since filing the Complaint that C.AI has not yet identified. The Complaint admits J.F. and B.R. intend to continue using C.AI's services. Compl. ¶ 114 ("J.F. also made it clear that he will access C.AI the first chance he gets."), ¶ 121 (B.R. "seek[s] out C.AI at every opportunity").

A minor "is not permitted to retain the benefits of a contract while repudiating its obligations." *Dairyland*, 498 S.W.2d at 158; *accord Babu v. Petersen*, 48 P.2d 689, 694 (Cal. 1935); *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417, 421–22 (1969). For this reason, courts routinely reject minors' attempts to disaffirm an online service's terms of service when the minors continue to use that service. For example, in *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015), the Ninth Circuit affirmed a finding that minor plaintiffs did not disaffirm Facebook's Terms of Service because, "[b]y continuing to use facebook.com after bringing their action, [p]laintiffs manifested an intention not to disaffirm the contract." *Id.* at 489; *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (same); *see also, e.g.*, *J.A. ex rel. Allen v. Microsoft Corp.*, 2021 WL 1723454, at *9 (W.D. Wash. Apr. 2, 2021); *Baker v. adidas Am., Inc.*, 2008 WL 11429938, at *5–6 (E.D.N.C. Mar. 5, 2008). These authorities disprove any attempted disaffirmation because there has been

14

recent activity on B.R.'s account and both J.F. and B.R. intend to continue using C.AI.[5]  *See Dairyland*, 498 S.W.2d at 158; *Babu*, 48 P.2d at 694.

### E.    A Stay Pending Arbitration (or Any Appeal) Is Appropriate

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *accord Hines v. Stamos*, 111 F.4th 551, 565 (5th Cir. 2024).  Thus, if this Court grants C.AI's motion, it must stay all claims against C.AI until arbitration proceedings end.

The Court should also stay all claims against the other defendants.  Those claims are entirely derivative of the claims against C.AI and involve many of the same legal and factual issues.  It would fundamentally prejudice C.AI's rights if those issues were litigated—in its absence—when it has a federal statutory right to have those issues decided by an arbitrator.  *See Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir. 2000) ("[W]e fail to see how litigation could proceed as to [non-signatory] without adversely affecting [defendant]'s right to arbitrate."); *Courtright v. Epic Games, Inc.*, 2025 WL 558560, at *9 (W.D. Mo. Feb. 13, 2025) (compelling arbitration and staying derivative claims); *Orellana*, 2025 WL 694428, at *11 (same).

If the Court does not grant C.AI's motion, it must stay proceedings pending interlocutory appeal, if any.  9 U.S.C. § 16(a)(1)(B); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023).

## IV.    CONCLUSION

For these reasons, C.AI requests that the Court compel individual arbitration of Plaintiffs' claims and stay further proceedings.  C.AI also requests a hearing pursuant to Local Rule CV-7(g).

---

[5] Any allegation that J.F. or B.R. is "addicted" to C.AI—a contested issue for the arbitrator to resolve—does not change that a minor cannot retain benefits under a contract and disaffirm it.

Jonathan H. Blavin* (Lead Counsel)
Cal. Bar No. 230269
Victoria A. Degtyareva*
Stephanie Goldfarb Herrera*
MUNGER, TOLLES & OLSON, LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
Jonathan.Blavin@mto.com
Stephanie.Herrera@mto.com
Victoria.Degtyareva@mto.com
*Admitted Pro Hac Vice

/s/ Melissa R. Smith
Melissa R. Smith
Texas Bar No. 24001351
GILLIAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
melissa@gilliamsmithlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2025, I electronically submitted the foregoing document with the clerk of the United States District Court for the Eastern District of Texas, using the Court's CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Melissa R. Smith*
Melissa R. Smith

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(i), I hereby certify that on March 5, 2025, Jonathan Blavin, Stephanie Herrera, and Andrew T. Gorham, counsel for C.AI, and Matthew Bergman, Meetali Jain, and Samuel F. Baxter, counsel for Plaintiffs, conferred by video conference regarding the issues in this motion, in accordance with the requirements of Local Rule CV-7(h). The parties were unable to reach agreement, and Plaintiffs oppose this motion.

*/s/ Melissa R. Smith*
Melissa R. Smith