# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| A.F., on behalf of J.F., and A.R., on behalf of B.R., | Case No. 2:24-cv-01014-JRG-RSP |
|        Plaintiffs, | |
|    v. | |
| CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS ADIWARSANA; GOOGLE LLC; ALPHABET INC., | |
|        Defendants. | |

**DEFENDANTS GOOGLE LLC'S, ALPHABET INC.'S, NOAM SHAZEER'S AND DANIEL DE FREITAS'S MOTION TO COMPEL ARBITRATION <u>AND TO STAY PROCEEDINGS PENDING ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 3

        A.      Plaintiffs' Allegations ................................................................................... 3

        B.      Plaintiffs Agreed to Arbitrate Disputes Related to Their Use of C.AI ................. 5

III.    LEGAL STANDARD ................................................................................................. 5

IV.     ARGUMENT ............................................................................................................. 7

        A.      The Arbitration Agreement is Valid ............................................................... 7

        B.      Equitable Estoppel Permits Movants to Enforce the Arbitration Agreement ........ 8

                1.      Plaintiffs Allege That Movants Have a Close Relationship with
                        C.AI ................................................................................................... 9

                2.      Plaintiffs' Claims are Intertwined with C.AI's TOS ............................... 12

        C.      The Arbitrator Should Decide Any Dispute as to Scope, but Plaintiffs'
                Claims Fall Within the Scope of the Arbitration Agreement Regardless ............. 14

        D.      This Court Must Compel Arbitration and Stay the Proceedings ......................... 14

        E.      In the Alternative, the Court Should Stay This Matter Pending Arbitration
                Between Plaintiffs and C.AI or an Appeal ...................................................... 15

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Apollo Comput., Inc. v. Berg*,
    886 F.2d 469 (1st Cir. 1989) ........................................................................................8

*Arnold v. Homeaway, Inc.*,
    890 F.3d 546 (5th Cir. 2018) ................................................................................6, 14

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ....................................................................................................6

*Baker Hughes Saudi Arabia Co. v. Dynamic Indus., Inc.*,
    126 F.4th 1073 (5th Cir. 2025) .................................................................................14

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ....................................................................................................5

*Byrd v. Woodruff*,
    891 S.W.2d 689 (Tex. App. 1994) ..............................................................................3

*Casa Arena Blanca LLC v. Rainwater*,
    2022 WL 839800 (10th Cir. Mar. 22, 2022) ...............................................................8

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) ..................................................................................................15

*Contec Corp. v. Remote Sol. Co.*,
    398 F.3d 205 (2d Cir. 2005) .......................................................................................8

*Cotton Com. USA, Inc. v. Clear Creek Indep. Sch. Dist.*,
    387 S.W.3d 99 (Tex. App.—Houston [14th Dist.] 2012) ....................................12, 14

*Cure & Assocs., P.C. v. LPL Fin. LLC*,
    118 F.4th 663 (5th Cir. 2024) .....................................................................................6

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014) ....................................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ....................................................................................................6

*Garg v. Pham*,
    485 S.W.3d 91 (Tex. App.—Houston [14th Dist.] 2015) ..........................................14

*Grigson v. Creative Artists Agency L.L.C.*,
    210 F.3d 524 (5th Cir. 2000) ....................................................3, 8

*Harvey v. Joyce*,
    199 F.3d 790 (5th Cir. 2000),
    *aff'd*, 280 F. App'x 340 (5th Cir. 2008)....................................................15

*Hays v. HCA Holdings, Inc.*,
    838 F.3d 605 (5th Cir. 2016) ................................................... *passim*

*Henry v. Cash Biz, LP*,
    551 S.W.3d 111 (Tex. 2018)....................................................5

*In re Merrill Lynch Trust Co. FSB*,
    235 S.W.3d 185 (Tex. 2007)....................................................8, 12

*In re StockX Customer Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021) ....................................................7

*K.F.C. v. Snap Inc.*,
    29 F.4th 835 (7th Cir. 2022) ....................................................7

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005)....................................................11

*Llagas v. Sealift Holdings, Inc.*,
    2023 WL 8613607 (5th Cir. Dec. 13, 2023) ....................................................2, 8

*Maxey v. Rodman*,
    444 S.W. 2d 353 (Tex. Ct. Civ. App. 1969) ....................................................4

*Newman v. Plains All Am. Pipeline, L.P.*,
    23 F.4th 393 (5th Cir. 2022) ....................................................8

*Newman v. Plains All Am. Pipeline, L.P.*,
    44 F.4th 251 (5th Cir. 2022) ....................................................8

*Osornia v. AmeriMex Motor & Controls, Inc.*,
    367 S.W.3d 707 (Tex. App.—Houston [14th Dist.] 2012, no pet.)....................................................14

*PAK Foods Houston, LLC v. Garcia*,
    433 S.W.3d 171 (Tex. App. Houston [14th Dist.] 2014, pet. dism'd)....................................................7

*Primerica Life Insurance Co. v. Brown*,
    304 F.3d 469 (5th Cir. 2002) ....................................................7

*Quinn v. EMC Corp.*,
    109 F. Supp. 2d 681 (S.D. Tex. 2000) ....................................................14

*R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*,
 428 F.3d 214 (5th Cir. 2005) ...................................................................6

*Rent-A-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) ........................................................................7, 14

*Sherer v. Green Tree Servicing LLC*,
 548 F.3d 379 (5th Cir. 2008) ...................................................................6

*Signal Ridge v. Landmark Am. Ins. Co.*,
 657 F. Supp. 3d 866 (N.D. Tex. 2023) .......................................................12

*Smith v. Spizzirri*,
 601 U.S. 472 (2024) ...........................................................................15

*Wheeler v. Dollar Tree Stores, Inc.*,
 2017 WL 3426300 (W.D. La. Aug. 8, 2017) .................................................15

## STATUTES

9 U.S.C. § 3 .........................................................................................15

9 U.S.C. § 4 ....................................................................................1, 6, 15

9 U.S.C. §§ 1–16 ...............................................................................5, 14

Defendants Google LLC, Alphabet Inc., Noam Shazeer, and Daniel De Freitas[1] ("Movants") move the Court to stay this case against them and to compel arbitration pursuant to 9 U.S.C. § 4, as well as Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure.[2]

## I.    INTRODUCTION

Plaintiffs' claims against Character AI ("C.AI") are subject to binding individual arbitration because of Terms of Service ("TOS") agreements with C.AI. Although Movants were not signatories to those agreements, Plaintiffs' claims against Movants are so tied up with their claims against C.AI that blackletter principles of equitable estoppel require that these intertwined claims be arbitrated together.

As C.AI explains in its concurrently-filed motion to compel arbitration, J.F. and B.R.—on whose behalf Plaintiffs bring this suit—created accounts with C.AI and in the process, agreed to C.AI's TOS. The TOS include an arbitration agreement expressly encompassing "all disputes or claims that have arisen or may arise between you and Character.AI." While Plaintiffs purport to disaffirm J.F.'s and B.R.'s agreements with C.AI, C.AI disputes whether they may do so while J.F. and B.R. continue to use, or intend to continue using, C.AI's service, and retain the benefits of that service. That dispute

---

[1] Defendants De Freitas and Shazeer (the "Individual Defendants") have concurrently filed motions to dismiss for lack of personal jurisdiction. The Individual Defendants expressly and affirmatively consent to the personal jurisdiction of this court for the limited purpose of resolving their motion to compel arbitration. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 529 n.2 (5th Cir. 2019) ("This court has definitively held that a defendant can subject itself to the court's jurisdiction for 'the limited purpose of compelling arbitration' without waiving challenges to personal jurisdiction for other purposes" (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016))). The Court should accordingly address this motion before the motions to dismiss for lack of personal jurisdiction.

[2] "[T]he Fifth Circuit has not yet explicitly decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper vehicle for resolving a motion to compel arbitration." *Wheeler v. Dollar Tree Stores, Inc.*, 2017 WL 3426300, at *2 (W.D. La. Aug. 8, 2017).

over Plaintiffs' disaffirmance defense is an enforceability issue that falls squarely within the arbitration agreement's delegation provision, and, as numerous courts have found, it is thus a threshold issue that the arbitrator must decide, not a basis to resist arbitration.

Plaintiffs' claims against Movants must be arbitrated together with the claims against C.AI. Under Texas's "intertwined claims" doctrine, a rule of estoppel, Plaintiffs may not ask the Court to treat Movants and C.AI differently for purposes of arbitration while simultaneously making allegations that try to tie them together for purposes of liability. That doctrine requires two elements, both of which are easily met. First, Plaintiffs' allegations treat Movants as having "a close relationship with one of the signatories"—C.AI. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016). Throughout their complaint, Plaintiffs consistently present Defendants as a unified group, treating C.AI's chatbot as "*Defendants'* product, C.AI," Compl. ¶ 216 (emphasis added), and seeking to hold them liable, without differentiation, for "Defendants' [alleged] defective design," *id.* ¶ 3, for "Defendants' [alleged] failure to provide adequate warnings … and failure to exercise ordinary and reasonable care," *id.* ¶¶ 4–5, and for "Defendants' [alleged] violation of one or more state and/or federal laws," *id.* ¶ 6. On the face of the Complaint, it is "undeniable that [Plaintiffs] regarded the parties as closely related," *Hays*, 838 F.3d at 613, for Plaintiffs do not even describe the conduct of each Movant supposedly giving rise to liability, instead seeking to hold Movants liable *for* their alleged relationship with C.AI, *see* Compl. ¶¶ 170–171 (alleging Shazeer and De Freitas founded and operated C.AI); ¶ 172 (alleging Google was a "co-creator" of the C.AI chatbot); ¶ 195 (alleging C.AI did not "distinguish[] [itself] from Google in a meaningful way"). While Google disputes these "close relationship" allegations, Plaintiffs cannot "have it both ways" and rely upon them as a basis for liability, while insisting that C.AI and Google stand apart for purposes of J.F.'s and B.R.'s arbitration agreements. *See Llagas v. Sealift Holdings, Inc.*, 2023 WL 8613607, at *3 (5th Cir. Dec. 13, 2023)

(quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)).

Second, Plaintiffs' claims are "intimately founded in and intertwined with the underlying contract obligations." *Hays*, 838 F.3d at 610. Plaintiffs expressly invoke the TOS in defining the supposed defects in C.AI's service as arising from its alleged failure to "adhere to its own terms of service" regarding content, Compl. at 90, seeking to impose "consequences" for "a failure to follow one's own established policies." *Id.* ¶ 332. Plaintiffs also tie the purportedly inappropriate content of J.F. and B.R.'s conversations with C.AI's chatbots to the alleged receipt of "rights and licenses" to user data under the TOS, *id.* ¶ 275; *see id.* ¶¶ 154, 302. Estoppel does not permit Plaintiffs to wield C.AI's policies against Movants while attempting to distinguish Movants and C.AI for purposes of arbitration. *See Hays*, 838 F.3d at 610.

Because Plaintiffs' own allegations intertwine their claims against Movants with both C.AI and its TOS, equitable estoppel applies, and all their claims must be arbitrated together.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations

Plaintiffs A.F. and A.R bring this case on behalf of their children, J.F. and B.R.,[3] respectively, alleging harm arising from J.F.'s and B.R.'s use of C.AI's generative AI chatbot. Compl. ¶¶ 1, 2, 9. Across ten counts, Plaintiffs assert two core theories: First, they assert that C.AI's service uses "sexual and violent content," *id.* ¶ 229, and "an anthropomorphic user interface," *id.* ¶ 240, that pose particular risks to minors, *e.g.*, *id.* ¶¶ 60–105, 372, 376, 392. In offering its service, the Complaint alleges, C.AI fails to "adhere to its own terms of service and policies" regarding content, *id.* ¶ 332, and the age of

---

[3] Because A.F. and A.R. bring this case on behalf their children, they are "present in a representative capacity only," while J.F. and B.R. "remain[] the real part[ies] in interest." *Byrd v. Woodruff*, 891 S.W.2d 689, 704 (Tex. App. 1994).

users who may see that content, *id.* ¶ 130.  Second, Plaintiffs connect the purportedly inappropriate content in J.F. and B.R.'s conversations with chatbots to Defendants' alleged exploitation of "rights and licenses" to user data in the TOS, claiming Defendants "ma[ke] use of that data to directly train and improve" chatbots.  *Id.* ¶ 9.

Plaintiffs do not allege any specific, separate misconduct by Shazeer, De Freitas, or Google. Throughout the Complaint, Plaintiffs treat Defendants as a single unit, characterizing C.AI's chatbot as "Defendants' product," Compl. ¶ 216, and alleging "Defendants financed, designed," "produced," and "marketed C.AI, and then placed it into the stream of commerce," *id.* ¶¶ 374(h), 383.  Inasmuch as they allege misconduct by Movants, those allegations are derivative of those against C.AI, and rest on the notion that Movants have such a close relationship to C.AI that they may be deemed liable for any harm allegedly caused by C.AI's service.  *E.g.*, Compl. ¶ 183 ("Google, Shazeer, and De Freitas specifically directed and controlled the design of C.AI … .").  As to Shazeer and De Freitas, Plaintiffs' theory of liability turns on their roles as co-founders and former executives of C.AI.  *Id.* ¶¶ 26–32.[4] As to Google, Plaintiffs allege that Google provided unspecified "financial resources, personnel, intellectual property, and AI technology to the design and development of C.AI," which, Plaintiffs claim, make Google "effectively a co-creator" of C.AI's service.  *Id.* ¶ 172.  Plaintiffs do not discuss Alphabet at all, but instead treat it as synonymous with Google.  *Id.* ¶ 1.  To be clear, Google disputes these allegations regarding its relationship with C.AI.  C.AI and Google are and always have been separate companies; they have dealt with each other as separate companies; Google in no way designed

---

[4] Shazeer and De Freitas dispute that Plaintiffs have adequately alleged any conduct by them in their personal capacities that could give rise to individual liability.  *E.g.*, *Maxey v. Rodman*, 444 S.W. 2d 353, 358 (Tex. Ct. Civ. App. 1969) (corporate officer cannot be held liable because "of the fact that he occupies such position").  But, as with Google, Plaintiffs must be held to their allegations in assessing their contractual obligation to arbitrate.

C.AI's service; and Plaintiffs allege no actual facts plausibly suggesting otherwise.  Plaintiffs must be held to their allegations, however, in assessing their contractual obligation to arbitrate their claims.

### B.    Plaintiffs Agreed to Arbitrate Disputes Related to Their Use of C.AI

As discussed in greater detail in C.AI's contemporaneously-filed brief, C.AI, like many online services requires users to agree to its TOS before using its app.  *See* C.AI Mot., ECF No. 34, at 1–4, 8–10; Nahman Decl. ¶¶ 9–15.  In relevant part, those terms provided that:

> You agree that any and all disputes or claims that have arisen or may arise between you and Character.AI, whether arising out of or relating to these Terms (including any alleged breach thereof), the Website or Services, any aspect of the relationship or transactions between us, shall be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims qualify. Further, this Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, and such agencies can, if the law allows, seek relief against us on your behalf.  You agree that, by entering into these Terms, you and Character.AI are each waiving the right to a trial by jury or to participate in a class action.  Your rights will be determined by a neutral arbitrator, not a judge or jury.

Nahman Decl. Ex. C at 4, Ex. E at 4.  While the Complaint acknowledges the TOS, Plaintiffs purport to disaffirm that agreement.  Compl. ¶¶ 15–19.  However, the terms contained an explicit delegation clause, incorporating the "JAMS' Streamlined Arbitration Rules and Procedures" and explaining that "[a]ll issues are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement."  Nahman Decl. Ex. C at 5, Ex. E at 5.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  While the FAA "generally governs arbitration provisions in contracts involving interstate commerce," *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018),

courts look to state law in the first instance to determine if an agreement to arbitrate exists, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and who can enforce it, *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).[5]  Thus, where a non-party to a contract seeks to compel arbitration against a party, and the contract does not explicitly provide for third-party enforcement, courts "look to theories such as equitable estoppel to determine whether a nonsignatory may compel arbitration." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008).

Where one party refuses to arbitrate pursuant to a valid arbitration agreement, another may request a court order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  "A two-step analysis is applied to determine whether a party may be compelled to arbitrate." *Sherer*, 548 F.3d at 381.  First, the court asks "if the party has agreed to arbitrate the dispute." *Id.*  This first question normally requires asking (1) whether there is a valid agreement to arbitrate the claims, and (2) whether "the dispute in question fall[s] within the scope of that arbitration agreement." *Id.*  But the "parties are free to delegate" threshold questions of "the validity and scope of the arbitration provision itself" to the arbitrator. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018).  Second, the court asks "if 'any federal statute or policy renders the claims non-arbitrable.'" *Sherer*, 548 F.3d at 381 (citation omitted).  Where no party invokes such a statute or policy, the court need not address this second issue. *See id.*

---

[5] While the Arbitration Agreement contains a California choice-of-law provision, Plaintiffs filed their Complaint in this Court under diversity jurisdiction and bring, *inter alia*, a Texas statutory claim against the defendants, Compl. ¶¶ 33, 460–67.  This motion applies the law of Texas, the forum state, because Texas and California law are in accord on the issues raised in this motion.  "Under California law . . . a nonsignatory plaintiff can be compelled to arbitrate a claim when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause." *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 669 (5th Cir. 2024) (simplified).  "And for present purposes, the same is true under Texas law." *Id.*  A court need not conduct a choice of law analysis "[w]here there are no differences between the relevant substantive laws of the respective states." *R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).

## IV.    ARGUMENT

As set out more fully in C.AI's own motion to compel arbitration, J.F. and B.R. entered into valid arbitration agreements that cover the dispute at issue here.   Under principles of equitable estoppel, that agreement is equally enforceable by Movants, whom Plaintiffs have sued solely based on their alleged relationship to C.AI, through claims inextricably intertwined with C.AI's TOS.

### A.    The Arbitration Agreement is Valid

As set forth in C.AI's brief, J.F. and B.R. each created accounts with C.AI and expressly agreed to its TOS, including its arbitration agreement.   C.AI Mot. at 1–4, 8–11; Nahman Decl. ¶¶ 11–15. While Plaintiffs purport to disaffirm the TOS of behalf of J.F. and B.R. and insist they "are not bound by [them]," Compl. ¶¶ 15, 19, C.AI has explained, in its concurrently-filed motion, that Plaintiffs may not disaffirm the TOS while J.F. and B.R. retain the benefits of their agreements with C.AI and either are continuing to use, or intend to continue using, the service.   C.AI Mot. at 11–15.   Indeed, because disaffirmance does not negate the formation of an arbitration agreement, but is rather a "defense[] to the enforcement of the agreement," *PAK Foods Houston, LLC v. Garcia*, 433 S.W.3d 171, 176 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd), this disaffirmance dispute is a threshold issue for the arbitrator in the first instance, *see K.F.C. v. Snap Inc.*, 29 F.4th 835, 837–38 (7th Cir. 2022); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 884–86 (6th Cir. 2021); *accord Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2, 72 (2010) (courts must enforce delegation provision unless a party "challenge[s] the delegation provision specifically" or disputes whether an arbitration agreement "was ever concluded"); *Primerica Life Insurance Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) (mental incapacity defense must be decided by arbitrator).

-7-

**B.    Equitable Estoppel Permits Movants to Enforce the Arbitration Agreement[6]**

Like most jurisdictions, Texas has recognized that if a party to a contract with an arbitration provision sues both signatory and non-signatory defendants, equitable estoppel may permit the non-signatory to enforce the arbitration agreement if the claims are sufficiently overlapping and tied to the contract at issue.  Texas follows the "intertwined-claims" form of equitable estoppel, "compel[ing] arbitration when [1] a nonsignatory defendant [allegedly] has a close relationship with one of the signatories and [2] the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Hays,* 838 F.3d at 610 (citation omitted).  "The theory is that a signatory to an agreement with an arbitration clause cannot 'have it both ways' by, on the one hand, seeking 'to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision,' while, on the other hand, 'deny[ing] arbitration's applicability because the defendant is a non-signatory.'" *Llagas*, 2023 WL 8613607, at *3 (quoting *Grigson*, 210 F.3d at 528).  That result would be unfair, the Texas Supreme Court has explained, because permitting a plaintiff to proceed in court on a lawsuit "that is in substance against a signatory though in form against a nonsignatory" would "allow indirectly what cannot be done directly." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185,

---

[6] Because the arbitration agreement delegates questions of "enforceability" to the arbitrator, Movants submit that the arbitrator should decide, in the first instance, whether Movants may enforce the arbitration agreement against Plaintiffs.  Movants recognize, however, that the Fifth Circuit recently held that enforcement of an arbitration provision by estoppel is an issue for courts, and this Court is bound by that decision.  *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393 (5th Cir. 2022).  But, as three judges noted in a dissent from denial of rehearing of *Newman*, that decision is "out-of-step with at least five other circuits (to say nothing of the Supreme Court) and appear[s] to be in accord with none."  *Newman v. Plains All Am. Pipeline, L.P.*, 44 F.4th 251 (5th Cir. 2022) (Jones, J., dissenting from denial of rehearing en banc); *see also Casa Arena Blanca LLC v. Rainwater*, 2022 WL 839800, *1 (10th Cir. Mar. 22, 2022); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 209–11 (2d Cir. 2005); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472–74 (1st Cir. 1989).  Movants therefore reserve the right to argue in future proceedings, or in view of future developments in the law, that the issue of equitable estoppel has been validly delegated to the arbitrator.

193–94 (Tex. 2007).

###### 1.    Plaintiffs Allege That Movants Have a Close Relationship with C.AI

Plaintiffs' claims against Movants turn entirely on the premise that they have such a close relationship with C.AI as to be inseparable for purposes of liability. On those allegations, the "close relationship" requirement is easily met.

*Hays* controls. There, the Fifth Circuit held that the plaintiff's allegations satisfied the "close relationship" prong because the plaintiff treated signatory and nonsignatory defendants "as a single unit in his pleadings, raising virtually indistinguishable factual allegations against [signatory defendants] in arbitration and against [non-signatory defendant] here." *Hays*, 838 F.3d at 612. The court reasoned that Plaintiff's "complaint in this action and his counter-demand in arbitration use almost identical language, substituting only the names of the defendants," which the plaintiff treated "as if they were interchangeable." *Id*. at 612–13. While the *Hays* plaintiff attempted to cleave the parties while opposing arbitration, the Fifth Circuit rejected this gambit, describing those "efforts to distinguish amongst defendants and claims" as "the archetype of strategic pleading intended to avoid the arbitral forum, precisely what intertwined claims estoppel is designed to prevent." *Id*. at 613.

Here, as in *Hays*, "[i]t is undeniable that [Plaintiffs] regarded the parties as closely related by failing to differentiate [their] factual allegations" and asserting the same theories against C.AI and Movants. *Cf.* 838 F.3d at 613. First, Plaintiffs consistently lump C.AI, Google, Shazeer, and De Freitas together, alleging, in blunderbuss fashion, that they are responsible for the same purported misconduct. Plaintiffs specifically treat C.AI's chatbot as "*Defendants'* product," Compl. ¶ 216 (emphasis added), and seek to recover for "*Defendants'* [alleged] calculated and continued business decisions" regarding the C.AI chatbot, including purportedly "[c]reat[ing], launch[ing], and operat[ing]" the chatbot, *id.* ¶ 137(a), and "[t]arget[ing] and market[ing] this product," *id.* ¶ 137(c).

Plaintiffs assert virtually all their causes of action against Defendants collectively:  they purport to bring "claims of strict liability based on *Defendants'* [allegedly] defective design" of C.AI's service, Compl. ¶ 3 (emphasis added); "claims of strict liability based on *Defendants'* [alleged] failure to provide adequate warnings," *id.* ¶ 4 (emphasis added); "claims for common law negligence arising from *Defendants'* [allegedly] unreasonably dangerous designs and failure to exercise ordinary and reasonable care," *id.* ¶ 5 (emphasis added); "negligence per se theories against Defendants Character Technologies and Google based on *Defendants'* [purported] violation of one or more state and/or federal laws," *id.* ¶ 6; for unjust enrichment, on the theory that "[c]ustomers of C.AI confer[red] benefits on *Defendants* in the form of furnishing personal data for Defendants," *id.* ¶ 9 (emphasis added); and IIED claims on the theory that "*[e]ach of these defendants* [allegedly] chose to support, create, launch, and target at minors and/or vulnerable consumers [the chatbot]," *id.* ¶ 10 (emphasis added).

The Complaint carries forward this undifferentiated treatment of Defendants in the allegations supporting Plaintiffs' individual causes of action.  For example, in the allegations supporting their strict liability claim for failure to warn, Plaintiffs allege that "*Defendants* financed, designed, coded, engineered, manufactured, produced, assembled, and marketed C.AI, and then placed it into the stream of commerce," without disaggregating the alleged roles and conduct making each Defendant liable. Compl. ¶ 383 (emphasis added).  Similarly, in setting out their strict-liability claim for design defect, Plaintiffs allege generally that "Defendants intentionally chose to not implement" purported "reasonable, alternative designs."  *Id.* ¶ 378.  And in their allegations supporting their unjust enrichment claim, Plaintiffs aver that "Defendants wrongfully secured a benefit from [Plaintiffs] in the form of their data," without specifying how the individual defendants received that benefit.  *Id.* ¶ 450.  Plaintiffs assert no cause of action against Shazeer or De Freitas that is not also asserted against

C.AI and do not mention either man by name in those count-specific sections.  *See id.* ¶¶ 374–467. As to Google, the only separately alleged claim is for aiding and abetting, which is premised upon Plaintiffs' allegations of a close relationship between the companies.  *See id.* ¶¶ 401–03.

Second, the Complaint's factual allegations make it "undeniable that [Plaintiffs] regarded the parties as closely related."  *Hays*, 838 F.3d at 613.  Plaintiffs repeatedly characterize C.AI's chatbot as "*Defendants'* product," and not just a service offered by C.AI.  Compl. ¶ 197.  Plaintiffs' claims against Shazeer and De Freitas arise entirely from their roles and work at C.AI.  *See id.* ¶¶ 26–32, 170, 183.  As to Google, Plaintiffs' theory is that "Google was effectively a co-creator" of the C.AI chatbot, purportedly "contribut[ing] financial resources, personnel, intellectual property, and AI technology to the design and development of C.AI."  *Id.* ¶ 172.  Plaintiffs argue that C.AI "never succeeded in distinguishing themselves [sic] from Google in a meaningful way."  *Id.* ¶ 195.  Plaintiffs allege a purported conspiracy between Google, C.AI, Shazeer, and De Freitas to use C.AI as a "vehicle to develop [purportedly] dangerous and untested technology over which Google ultimately would gain effective control."  *Id.* ¶ 171.  As Plaintiffs would have it, Defendants "agreed that Shazeer and De Freitas would temporarily sever their formal ties with Google, develop their novel AI technologies through [C.AI] … and then furnish their newly developed technology to Google."  *Id.*

To be sure, Defendants dispute these allegations, and Google in particular disputes Plaintiffs' effort to collapse the distinctions between Google and C.AI.  In reality, Google and C.AI are wholly separate companies, with only arm's length, contractual relationships between them.  But the essential point for purposes of equitable estoppel is that Plaintiffs themselves have treated Defendants together in their Complaint and in seeking to impose liability on them.  Being "masters of their complaint," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005), and having pled an overarching theory of liability "in [their] pleadings" that treats Defendants "as a single unit," Plaintiffs are bound to those allegations

-11-

for purposes of enforcing the arbitration agreement, *Hays*, 838 F.3d at 612; *see Cotton Com. USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 107 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (explaining "it is [plaintiff's] pleading of the facts underlying its claims that has controlled" the estoppel inquiry).  Were Plaintiffs allowed to pursue their claims on the basis of these allegations, while at once abandoning them in opposing arbitration, they would be rewarded for just the sort of "strategic pleading by a signatory" that equitable estoppel is intended to avoid.  *See Merrill Lynch*, 235 S.W.3d at 194.  This Court should reject that effort.  *See Signal Ridge v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 876–77 (N.D. Tex. 2023) ("conclud[ing] that the elements of the intertwined-claims test are satisfied" because the plaintiff "treated the four insurers as one unit" even though they "lack[ed] the sort of formal corporate relationship that has 'generally' been required under the intertwined-claims theory").

### 2.    Plaintiffs' Claims are Intertwined with C.AI's TOS

Plaintiffs' allegations equally meet the second prong of the equitable estoppel test, for they demonstrate that Plaintiffs' claims are "intimately founded in and intertwined with the underlying contract obligations."  *See Hays,* 838 F.3d at 610 (citation omitted).  Plaintiffs connect their theory of liability and allegations of resulting harm to the TOS in three ways.

*First*, Plaintiffs specifically present the supposed defects with C.AI's service and Defendants' allegedly negligent conduct as arising from C.AI's alleged failure to "adhere to its own terms of service policies."  Compl. at 90.  They allege that their harm arose from exposure to "sexually explicit, violent, and otherwise harmful material," *id.* ¶ 6, because C.AI "was not enforcing its guidelines and programmed its products in a manner that allowed them to violate such guidelines," *id.* ¶ 127, despite C.AI allegedly "ha[ving] the ability to program its product to prevent its system from generating a reply that 'does not meet our guidelines,'" *id.* ¶ 346.  The TOS list categories of disallowed content.

*See* Nahman Decl. Ex. C at 1, Ex. E at 1–2.  Plaintiffs also target the TOS's age-related provisions: While the TOS forbid users under 13 from using the service, Plaintiffs fault C.AI for not adequately enforcing this provision by allegedly "do[ing] nothing to verify or substantiate users' self-reported ages," Compl. ¶ 130.  And they argue that the age-related provisions of the TOS should be changed to "require[e] customers to confirm that they are 18 or older and pay a monthly fee for access."  *Id.* ¶ 128.

*Second*, Plaintiffs further link their allegations to the TOS by claiming that the inappropriate content at issue results from the data collection policies in C.AI's TOS.  They allege that C.AI's TOS grant it "extensive 'rights and licenses'" to user data, Compl. ¶ 275, and that C.AI uses these rights to "train and improve the large language model that underlies" C.AI's service, *id.* ¶ 9, resulting in what they describe as a problem of "Garbage In, Garbage Out, (GIGO)," *id.* ¶ 154.  As Plaintiffs would have it, this GIGO cycle occurs because C.AI "initiate[s]" allegedly inappropriate "interactions" with minors in violation of its policies, "which interactions it then uses to feed and/or train its system," *id.* ¶ 302, exacerbating a "systematic problem" of inappropriate content, *id.* ¶ 333; *see also id.* ¶ 455 (alleging "J.F. and B.R. were active users of C.AI and shared their most intimate personal data with Defendants, who recklessly used it to train their LLM and gain a competitive advantage in the generative artificial intelligence market").

*Third*, other aspects of Plaintiffs' claims attack C.AI's terms directly, arguing that while those terms authorize the collection of data, *see* Compl. ¶ 275 (quoting TOS), that collection is "unjust" and "unlawful," *id.* ¶ 9, or "extreme and outrageous," *id.* ¶ 44; *see also id.* ¶ 463 (alleging Defendants "manipulate" users to "provide personal data").  And Plaintiffs seek, as a remedy, to "halt[] Defendants' continued distribution and use of all technologies trained on or developed as the result of" the collection of data from J.F. or B.R.  *Id.* ¶ 2; *see id.* at 122–23.

Again, because Movants invoke equitable estoppel, what matters is not the truth of Plaintiffs'

claims about Defendants actions or relationships, but that, having leveraged the TOS in seeking to establish liability, Plaintiffs are bound by their allegations for purposes of arbitration. *See Hays*, 838 F.3d at 612; *Cotton Com.*, 387 S.W.3d at 107.

### C.    The Arbitrator Should Decide Any Dispute as to Scope, but Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement Regardless

Because the delegation provision unequivocally delegates disputes about scope to the arbitrator, the Court should leave that threshold question for the arbitrator. *Arnold*, 890 F.3d at 554; *see* Nahman Decl. Ex. C at 5, Ex. E at 5 (delegating "issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement"); *see also Rent-A-Center*, 561 U.S. at 69 (parties may "agree[] to arbitrate or whether their agreement covers a particular controversy").

In any event, this case is plainly covered by the broad arbitration agreement. "Any doubts in construing the parties' objective intent are resolved in favor of arbitration." *Baker Hughes Saudi Arabia Co. v. Dynamic Indus., Inc.*, 126 F.4th 1073, 1088 (5th Cir. 2025). Here, the arbitration agreement extends to "any and all disputes or claims that have arisen or may arise between" the parties, Nahman Decl. Ex. C at 4, Ex. E at 4, plainly encompassing disputes such as this one, which related intimately to the service offered in connection with those terms, *see Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of 'any dispute arising between the parties' … .").

### D.    This Court Must Compel Arbitration and Stay the Proceedings

Because this dispute falls within the scope of a valid arbitration agreement, the Court "has no discretion but to compel arbitration." *See Garg v. Pham*, 485 S.W.3d 91, 102 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Quinn v. EMC Corp.*, 109 F. Supp. 2d 681, 687 (S.D. Tex. 2000).

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

E.    **In the Alternative, the Court Should Stay This Matter Pending Arbitration Between Plaintiffs and C.AI or an Appeal**

Even if the Court does not find that Movants are entitled to the benefit of intertwined claims estoppel, it should still stay the proceedings. If the Court finds the arbitration agreement enforceable by C.AI, but not Movants, then the matter should be stayed as to all parties pending resolution of the arbitration between C.AI and Plaintiffs. *See* C.AI Mot. at 15; *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir. 2000) (concluding that claims against non-signatory defendants must be stayed where they "are based on the same operative facts and are inherently inseparable from the claims against" the defendant whose claims are subject to arbitration). And, in any event, if the Court denies Defendants' motions, it must stay proceedings pending an interlocutory appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023).

## CONCLUSION

For the reasons stated, the Court should enter an order compelling Plaintiffs to individually arbitrate under § 4 of the FAA and stay this action pending resolution of arbitration. In the alternative, the Court should stay this case against Movants pending arbitration between Plaintiffs and C.AI, or pending an interlocutory appeal.

Dated: March 10, 2025                    Respectfully submitted,


                                        /s/ *Michael E. Jones*

                                        Michael E. Jones (State Bar No. 10929400)
                                        Shaun W. Hassett (State Bar No. 24074372)

-15-

POTTER MINTON, Professional Corporation
102 N. College, Suite 900
Tyler, Texas 75702
(903) 597-8311
mikejones@potterminton.com
shaunhassett@potterminton.com

Lauren Gallo White (PHV)
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Suite 3300
San Francisco, CA 94105
(415) 947-2000
lwhite@wsgr.com

Fred A. Rowley, Jr. (PHV)
Matthew K. Donohue (PHV)
Wilson Sonsini Goodrich & Rosati
953 E. Third Street, Suite 100
Los Angeles, CA 90013
(323) 210-2900
fred.rowley@wsgr.com
mdonohue@wsgr.com

*Counsel for Google LLC and Alphabet Inc.*

/s/  Isaac D. Chaput
Jennifer Parker Ainsworth
Texas Bar No. 00784720
Wilson, Robertson & VanDeventer, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Telephone: 903-509-5000
Email: jainsworth@wilsonlawfirm.com

Paul W. Schmidt* (LEAD COUNSEL)
COVINGTON & BURLING LLP
New York Times Building
620 Eighth Avenue,
New York, New York 10018-1405
Telephone: + 1 (212) 841-1171
Email: pschmidt@cov.com

Isaac D. Chaput*
COVINGTON & BURLING LLP
Salesforce Tower

-16-

415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-7020
Email: ichaput@cov.com

*Admitted Pro Hac Vice*

*Counsel for Defendant Noam Shazeer*

/s/  Andrew H. Schapiro

Andrew H. Schapiro (*pro hac vice*)
Lead Attorney
Illinois Bar No. 6209041
andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Hayden Little
Texas Bar No. 24136986
haydenlittle@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713) 221-7100

*Attorneys for Defendant Daniel De Freitas Adiwarsana*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(i), I hereby certify that on March 5, 2025, Matthew Donohue, counsel for Google and Alphabet; Isaac Chaput, counsel for Shazeer, Andrew Scapiro and Hayden Little, counsel for De Freitas; and Matthew Bergman, Meetali Jain, and Samuel F. Baxter, counsel for Plaintiffs, conferred by video conference regarding the issues in this motion, in accordance with the requirements of Local Rule CV-7(h).  The parties were unable to reach agreement, and Plaintiffs oppose this motion.

*/s/ Michael E. Jones*
Michael E. Jones