# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| A.F., ON BEHALF OF J.R.; AND A.R., ON BEHALF OF B.R., <br><br> Plaintiffs, <br><br> v. <br><br> CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS; GOOGLE, LLC; AND ALPHABET INC. <br><br> Defendants. | No. 2:24-CV-1014-JRG-RSP |

**RESPONSE TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND STAY (D.I. 34, 48, 39, 42)**

Plaintiffs respectfully file this Response to Defendants' Motions to Compel Arbitration and Stay (D.I. 34, 48, 39, 42) (collectively, the "Motions").[1]

The Motions are premised on the notion that an arbitration clause buried in the terms of service ("TOS") of the Character AI ("C.AI") app is enforceable against two children. As a matter of settled Texas law, which C.AI concedes governs here (D.I. 34 at 8), this premise is false.[2]

Still, Defendants contend—despite having failed to produce any evidence of Plaintiffs' *actual* alleged consents to the TOS[3]—that only an arbitrator may void the arbitration clause, and that this Court is required to stand aside in the meanwhile. In other words, although they proffer no legitimate basis upon which an 11-year old girl and a 17-year old autistic boy can be forced to arbitrate the *merits* of their claims, Defendants nevertheless ask this Court to compel a pointless procedural detour and stay this litigation while the parties complete it. Here too, Defendants' position has no support in Texas law.[4]

---

[1] Unless otherwise noted, all emphases herein were provided by Plaintiffs.

[2] *Taylor Morrison of Tex., Inc. v. Skufca*, 660 S.W.3d 525, 529 (Tex. 2003) ("A minor's own contract is generally voidable at the election of the minor."); *PAK Foods Hous., LLC v. Garcia*, 433 S.W.3d 171, 176-77 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) ("It has long been the law in Texas that a contract executed by a minor is . . . voidable by the minor."); *Jones v. State*, 31 Tex. Crim. 252, 20 S.W. 578, 599-600 (Tex. Cr. App. 1892) ("The law holds that infants are lacking in judgment and understanding sufficient to enable them to guard against their own interests, and the law protects them against their own improvidence and the designs of others by allowing them to avoid any act, contract, or conveyance not manifestly for their interest; and the general rule seems to be, no express contract, when repudiated or disaffirmed by the minor, can be enforced against him.").

[3] C.AI's motion and the declaration submitted in support argue that, before Plaintiffs downloaded the C.AI app, they "would have encountered" certain dialogue boxes that solicited their consents to the TOS. D.I. 40 ¶¶ 12, 14. But the *actual* consents C.AI allegedly received from Plaintiffs are nowhere in the record.

[4] *PAK Foods*, 433 S.W.3d at 178 (affirming the district court's denial of a motion to compel arbitration where the plaintiff, a minor, had disaffirmed the agreement to arbitrate by filing suit); *In re Mexican Restaurants, Inc.*, 2004 Tex. App. LEXIS 10807, *2 (Tex. App.—Eastland Dec. 2, 2004, orig. proceeding) (affirming the district court's denial of a motion to compel arbitration

All of this begs an obvious question: Why? Why have Defendants saddled the Court with motions they are certain to lose?[5] The answer is straightforward. After procuring a lengthy extension to answer Plaintiffs' complaint, Defendants are now attempting to delay yet again. What's more, Defendants have made it clear that, even if the Court denies the Motions, they will continue the procedural stalemate via an interlocutory appeal, which is authorized under the Federal Arbitration Act, and an associated, automatic stay that will likely add more than one year of additional delay. *See* D.I. 34 at 15 ("If the Court does not grant C.AI's motion, *it must stay proceedings pending interlocutory appeal*, if any. 9 U.S.C. § 16(a)(1)(B); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023).").

Defendants' "heads I win, tails you lose" strategy has given Plaintiffs no practical choice but to agree to submit the question of the enforceability of the arbitration clause to an arbitrator. Because this question has a pre-determined answer and the TOS commits C.AI to a streamlined procedure to get it resolved,[6] counsel for Plaintiffs reached out to counsel for C.AI to discuss a concrete plan to move things forward. Plaintiffs' proposal was fully consistent with the terms of the invalid arbitration agreement C.AI thrust upon Plaintiffs. Among other things, Plaintiffs requested C.AI's (i) agreement to the appointment of an arbitrator (Judge David Folsom); and (ii)

---

where the plaintiffs, who were aged 17 and 15 when they agreed to an employment contract that contained an arbitration clause, disaffirmed the arbitration agreements by ending their employment and filing suit).

[5] Plaintiffs note that, in another litigation involving similar-type abusive conduct that caused another minor to commit suicide, Defendants—represented by the same counsel who represent them here—did not file a motion to compel arbitration. *See Garcia v. Character Technologies, Inc.*, No. 6:24-cv-01903 (M.D. Fla.).

[6] *See* D.I. 34-1 at 11-12 (mandating the use of the streamlined rules of Judicial Arbitration and Mediation Services ("JAMS") tribunal, touting the "simple" nature of arbitration, and, for matters involving de minimis or no monetary relief, giving users the option to conduct "the arbitration . . . solely on the basis of documents submitted to the arbitrator").

commitment to work with Plaintiffs to complete the arbitration—which involves no monetary relief and thus will be conducted "solely on the basis of documents submitted to the arbitrator" (D.I. 34-1 at 12)—as soon as possible.

C.AI's response to Plaintiffs' proposal underscores that Defendants' invocation of the arbitration cause is nothing more than a delay tactic. Rather than work with Plaintiffs, C.AI rejected each and every aspect of Plaintiffs' proposal. Among other things, C.AI:

- Refused to confirm Judge Folsom's appointment—without offering an explanation or alternative;
- Refused to agree to an alternative protocol for selecting the arbitrator—without offering a competing proposal;
- Refused to allow both Plaintiffs to proceed in a single arbitration—even though the question to be submitted to the arbitrator is identical; and
- Refused to commit to working with Plaintiffs to ensure that the arbitration is completed as expeditiously as possible.

In fact, despite having asked this Court to "*compel*" Plaintiffs to arbitrate (D.I. 34 at 15), C.AI declined even to confirm that Plaintiffs are able to proceed in arbitration. Specifically, C.AI took the position that a 60-day "notice period" had to be exhausted before the arbitrations could go forward. Of course, Defendants' position is untenable given that (i) the 60-day "notice period" language appears in the very arbitration clause Plaintiffs wish to have declared invalid; and (ii) in mid-December, C.AI had in fact received a 200+-page "notice" of Plaintiffs' claims—the complaint that initiated this litigation.

On March 21, 2025, each Plaintiff initiated an arbitration with JAMS, naming C.AI as a respondent. *See* Exs. 1 and 2. Because C.AI refused to allow both Plaintiffs to proceed in one arbitration, Plaintiffs were forced to pay the JAMS filing fee twice. In response, C.AI took the position that, until Plaintiffs send C.AI "by certified mail, a written Notice of Dispute," JAMS lacks jurisdiction over Plaintiffs' arbitration demands. Ex. 3. Plaintiffs promptly responded to C.AI

jurisdictional objection, and JAMS is now considering whether the arbitrations can move forward. Exs. 4, 5.

Plaintiffs remain hopeful that C.AI will voluntarily stop sabotaging the very proceedings it has asked this Court to "compel." But Plaintiffs also respectfully submit that this Court has the authority to help break the stalemate. When they asked the Court to allow them to appear *pro hac vice* before the Court, counsel for Defendants agreed to be bound by this Court's Local Rules, including Rule AT-3 ("Standards of Practice to be Observed by Attorneys"), and the Code of Pretrial and Trial Conduct promulgated by the American College of Trial Lawyers (the "Code"), which is incorporated by reference in Rule AT-3. And having agreed to be bound by Rule AT-3, counsel for Defendants are *required by this Court's orders* to (i) "cooperat[e]" with counsel for Plaintiffs to ensure "the efficient administration of . . . justice;" (ii) forgo "antagonistic" behavior; (iii) "strive for [the] prompt, efficient, ethical, fair and just disposition of litigation;" and (iv) "agree to reasonable requests to waive procedural formalities." Rule AT-3(c) & (k); Code at 3, 4.

To be sure, Plaintiffs are not asking the Court to act as an arbitrator or evaluate the merits of Plaintiffs' arguments against the enforceability of the arbitration clause. But having accepted counsel's commitments to abide by Rule AT-3, the Court plainly has the authority to enforce those commitments and ensure that the arbitration the Court has been asked to "compel" moves forward without further delay. Thus, as a condition of staying this litigation, Plaintiffs respectfully request that the Court order the parties to (i) cooperate to ensure that the arbitration is conducted as efficiently and quickly as possible; (ii) come up with a concrete plan to move things forward prior to the April 23, 2025 conference; (iii) provide an update concerning that plan and the status of the arbitration during the conference; and (iv) provide periodic updates, *e.g.*, every 14 days, concerning the parties' efforts to cooperate with each other and the status of the arbitration.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Stay Order proposed by Plaintiffs.

Dated: March 26, 2025                                    Respectfully submitted,

|  |  |
|---|---|
| Radu A. Lelutiu<br>rlelutiu@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>(212) 402-9400<br>Fax: (212) 402-9444<br><br>Matthew Bergman<br>matt@socialmediavictims.org<br>Laura Marquez-Garrett<br>laura@socialmediavictims.org<br>Glenn Draper<br>glenn@socialmediavictims.org<br>600 1st Avenue, Suite 102-PMB 2383<br>Seattle, WA 98104<br>(206) 741-4862 | *s/ Samuel F. Baxter*<br>Samuel F. Baxter<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>jtruelove@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>104 East Houston, Suite 300<br>Marshall, Texas 75670<br>(903) 923-9000<br>Fax: (903) 923-9099<br><br>Meetali Jain<br>meetali@techjusticelaw.org<br>TECH JUSTICE LAW PROJECT<br>611 Pennsylvania Ave. SE #337<br>Washington, DC 20003 |

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 26, 2025 to counsel of record via the Court's ECF System.

*/s/ Radu A. Lelutiu*
Radu A. Lelutiu