# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| A.F., ON BEHALF OF J.R.; AND A.R., ON BEHALF OF B.R., <br><br> Plaintiffs, <br><br> v. <br><br> CHARACTER TECHNOLOGIES, INC.; NOAM SHAZEER; DANIEL DE FREITAS; GOOGLE, LLC; AND ALPHABET INC. <br><br> Defendants. | No. 2:24-CV-1014-JRG-RSP |

**CONSOLIDATED RESPONSE TO MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION (D.I. 33, 38) AND CROSS-MOTION TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiffs respectfully file this Consolidated Response to the Motions to Dismiss (D.I, 33, 38, the "Motions") filed by defendants Noam Shazeer and Daniel De Freitas.[1]

## I. INTRODUCTION

This case concerns two Texas-based children who suffered and are continuing to suffer severe psychological harm in Texas from generative AI chatbots whose design and distribution violate Texas law. Because the Texas long-arm statute allows Texas courts to exercise personal jurisdiction over parties who commit torts in Texas,[2] defendant Character Technologies, Inc. ("C.AI") has conceded personal jurisdiction. C.AI's co-founders Shazeer and De Freitas, however, argue that that they cannot be held to account in a Texas court because their connections to Texas are minimal or nonexistent.

Shazeer's and De Freitas's arguments for dismissal fail because they are directed at a proverbial strawman. Plaintiffs do not contend that this Court has personal jurisdiction over Shazeer and De Freitas based on their personal connections to Texas. Rather, Plaintiffs contend that Shazeer and De Freitas are C.AI's *alter egos* for jurisdictional purposes because they dominated and controlled C.AI by, among other things, personally financing, designing, coding, engineering, manufacturing, producing, assembling, and marketing the C.AI product. Shazeer's and De Freitas's perfunctory affidavits do not controvert any of the salient jurisdictional facts with respect to their being *alter egos* of C.AI.  The Court should therefore deny their dismissal bid.

Alternatively, if the Court concludes that the jurisdictional record is not sufficiently developed, Plaintiffs respectfully request a continuance and cross-move for leave to conduct

---

[1] Unless otherwise noted, all emphases herein were provided by Plaintiffs.

[2] *See, e.g.*, *Litepanels, LLC v, Gekko Tech., Ltd.*, 2006 U.S. Dist. LEXIS 75017, *5 (E.D. Tex. 2006).

jurisdictional discovery. *See Wyatt v. Kaplan,* 686 F.2d 276, 283-84 (5th Cir. 1982); *Brainstorm XX, LLC v. Wierman*, 2021 U.S. Dist. LEXIS 251477 (E.D. Tex. Nov. 23, 2021).

## II.    RELEVANT BACKGROUND

Shazeer is a co-founder of C.AI, the former CEO of the company, and one of the C.AI technical leads. Complaint for Strict Liability, *A.F., on behalf of J.F., and A.R., on behalf of B.R.*, No. 2:24-cv-01014-JRG-RSP (E.D. Tex. Dec. 9, 2024) ("Coml.") ¶ 26. He is also a co-inventor of the generative AI chatbots themselves, having personally coded and designed a substantial portion of the underlying infrastructure, C.AI's Large Language Model ("LLM"). *Id.* Shazeer has repeatedly acknowledged in interviews the potential dangers of the LLM to consumers, noting that, when he first began working this technology while employed by Google, even Google recognized the danger of the product he was designing. *Id.*

De Freitas is also a co-founder of C.AI, the former President of the company, and also one of the technical leads. *Id.* ¶ 27. De Freitas is likewise a co-inventor of the generative AI chatbots who, alongside Shazeer, also personally coded and designed a substantial portion of C.AI's LLM. *Id.*

Shazeer and De Freitas were not mere figureheads heading up an independent corporate entity with a mind of its own. Rather, as C.AI's dominant shareholders, they are alleged to have "controlled" all aspects of C.AI's activities, including by directly and personally financing, designing, coding, engineering, manufacturing, producing, assembling, and marketing the C.AI product. *Id.* ¶¶ 26, 29, 383. They did all these activities despite knowing of the inherent dangers associated with C.AI, as evidenced in part by Shazeer's own public statements and De Freitas' direct knowledge that they were "developing products that should not be released to consumers yet." *Id.* ¶¶ 148, 168, 179, 385. Moreover, neither Shazeer and De Freitas made any attempt to provide an appropriate warning to customers despite knowing the product they had both personally

designed and coded was unreasonably unsafe. *Id.* ¶¶ 387, 418-420, 431-432. The fact that Shazeer and De Freitas intentionally decided to target children, whom they understood to have a "premium value assigned to their sensitive personal data," renders their acts and omissions especially outrageous. *Id.* ¶¶ 445-446.

### III. ARGUMENT

**A. The Uncontroverted Jurisdictional Facts Establish Personal Jurisdiction Over Shazeer and De Freitas.**

Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits. *Bulkley & Assocs., LLC v. Dept' of Indus. Rels.*, 1 F4th 346, 351 (5th Cir. 2021). Under Texas law, "if the trial court has personal jurisdiction over a corporation that is the *alter ego* of an individual, the trial court may base personal jurisdiction over the individual upon its jurisdiction over the corporation." *Wormland v. Villarina*, 543 S.W.3d 315, 320-21 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Puri v. Mansukhani*, 973 S.W.2d 701, 712 (Tex. App.—Houston [14th Dist.] 1996, no pet.)).

The Supreme Court of Texas has explained that the elements required to pierce the corporate veil for liability purposes differ from those used for jurisdictional purposes. *Wormland*, 543 S.W.3d at 321-22 (citing *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007)). Thus, the jurisdictional test turns on the extent to which the individual controls or dominates the corporation. *PHC-Minden, L.P.*, 235 S.W.3d at 175 ("To 'fuse' a . . . company and [an individual] for jurisdictional, the plaintiff must prove th[at the individual] controls the internal business operations and affairs of the [company]."). "The rationale for exercising jurisdiction is that the [individual] exerts such domination and control over [the company] that they do not in reality constitute separate and distinct corporate entities but are one and the same . . . for purposes of jurisdiction." *Id.* at 173.

Where a plaintiff alleges personal jurisdiction based on an *alter ego* theory, the plaintiff must prove the *alter ego* allegations because Texas law presumes that the corporation and the defendant are distinct entities. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). At the pleading stage, however, "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc,*, 711 F.2d 1260, 1270 (5th Cir. 1983)). *See also Mem'l Hermann Health Sys. v. Snyder*, 2016 U.S. Dist. 133561, at *5 (E.D. Tex. Sept. 9, 2016) (same).

Here, Plaintiffs have plausibly alleged that Shazeer and De Freitas dominated and controlled C.AI—which at all times was a private corporate entity—to such a degree that the corporation was their mere instrumentality. Among other things, Plaintiffs allege that (i) Shazeer and De Freitas purposefully set up C.AI to avoid safety requirements and push technology to market that they knew posed a risk to safety to the public (Compl. ¶¶ 159, 168, 171, 183); (ii) C.AI had no real physical address, meaning that the corporation itself was not distinct from Shazeer and De Freitas (*id.* ¶ 191); (iii) external funding for C.AI was arranged "directly" by Shazeer (*id.* ¶ 28); (iv) all third-party funding was obtained for the benefit of Shazeer and De Freitas (*id.* ¶¶ 172, 180, 195, 383, 403(b)); (v) Shazeer and De Freitas dictated and dominated every aspect of C.AI's activities (*id.* ¶¶ 26, 29, 383); and (vi) once C.AI built its technology by, among other things, using vulnerable individuals as the equivalent of guinea pigs for an experimental generative AI engine, Shazeer and De Freitas struck an agreement with Google, LLC ("Google") to license this technology and wind up C.AI (*id.* ¶ 195). Public sources indicate that Shazeer, who owned between

30 percent and 40 percent of C.AI's stock, walked away with between $750 million and $1 billion from the $3 billion Google paid for C.AI's technology. *Id.* ¶ 190. It is likely that De Freitas's stock ownership in C.AI is comparable to Shazeer's, meaning that the two co-founders owned more than two thirds of C.AI's equity—a fact that by itself establishes that they controlled and dominated C.AI. In totality, these allegations comfortably demonstrate that C.AI was a mere instrumentality for Shazeer and De Freitas, and that C.AI's concession that it is subject to personal jurisdiction in this Court also binds Shazeer and De Freitas under an *alter ego* theory of jurisdiction.

Crucially, in their motion papers and supporting affidavits, neither Shazeer nor De Freitas contests these jurisdictional facts. Instead, they attack strawmen by focusing on their respective alleged lack of personal connections to or contacts with Texas. None of this is relevant under the *alter ego* theory of jurisdiction.[3] Because Plaintiffs have made a prima facie case for personal jurisdiction and Shazeer and De Freitas have not even attempted to engage Plaintiffs' arguments, the Court should deny the Motions.

### B. In the Alternative, the Court Should Order a Continuance and Grant Jurisdictional Discovery.

If the Court concludes that the factual record pertinent to the Motions is not sufficiently developed, it should grant a continuance and order jurisdictional discovery. District courts have broad discretion to permit such discovery, *Wyatt*, 686 F.2d at 283-84, and the Court should exercise its discretion here given the significant hardship that would befall Plaintiffs if they had to litigate in a different court.

---

[3] To the extent Shazeer and De Freitas attempt to controvert Plaintiffs' jurisdictional facts in their replies, the Court should find waiver. *Hammers v. Mayea-Chang*, 2019 U.S. Dist. LEXIS 213039, at *21 n.10 (E.D. Tex. Dec. 11, 2019) (citing *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 U.S. Dist. LEXIS 76941 (E.D. Tex. Apr. 18, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 76261 (E.D. Tex. May 6, 2019); *AAR, Inc. v. Nunez*, 408 F. App' 828, 830 (5th Cir. 2011); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

"A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 402 (E.D. Tex. 2022) (quoting *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, 2012 U.S. Dist. LEXIS 4192, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F. 3d 841, 855 (5th Cir. 2000))).

Plaintiffs respectfully request leave to pursue discovery—in the form of document requests and short, targeted depositions of Shazeer and De Freitas—concerning the extent to which Shazeer and De Freitas acted as *alter egos* of C.AI. In particular, the production of certain categories of documents is likely to confirm the bases for Plaintiffs' assertion of personal jurisdiction over Shazeer and De Freitas. These categories include:

- Documents concerning the reasons Shazeer and De Freitas left Google and set up C.AI;
- Documents concerning Shazeer's and De Freitas's ownership interest in C.AI;
- Documents concerning the extent to which C.AI observed corporate formalities;
- Documents concerning C.AI's corporate decision-making, and the extent to which it was dictated by Shazeer and De Freitas;
- Documents concerning ownership of LLM technology (including but not limited to C.AI's) and of patents or patent applications directed to such technology;
- Documents concerning Shazeer's and De Freitas's involvement in the financing, designing, coding, engineering, manufacturing, producing, assembling, and marketing of the C.AI chatbots and LLM;

- Documents concerning the terms of conditions for C.AI's receipt of funding from outside parties;

- Documents concerning agreements or understandings between and among Shazeer, De Freitas, and Google concerning C.AI and its LLM; and

- Documents concerning the wind-up of C.AI and the extent to which it was dictated by Shazeer and De Freitas.

Plaintiffs respectfully submit that the foregoing discovery is pertinent to the parties' jurisdictional dispute and is likely to further substantiate Plaintiffs' *alter ego* arguments for personal jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) deny the Motions; or (ii) in the alternative, grant a continuance and order jurisdictional discovery.

Dated: April 7, 2025                                                        Respectfully submitted,

|  |  |
|---|---|
| Radu A. Lelutiu<br>rlelutiu@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>(212) 402-9400<br>Fax: (212) 402-9444<br><br>Matthew Bergman<br>matt@socialmediavictims.org<br>Laura Marquez-Garrett<br>laura@socialmediavictims.org<br>Glenn Draper<br>glenn@socialmediavictims.org<br>600 1st Avenue, Suite 102-PMB 2383<br>Seattle, WA 98104<br>(206) 741-4862 | *s/ Samuel F. Baxter*<br>Samuel F. Baxter<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>jtruelove@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>104 East Houston, Suite 300<br>Marshall, Texas 75670<br>(903) 923-9000<br>Fax: (903) 923-9099<br><br>Meetali Jain<br>meetali@techjusticelaw.org<br>TECH JUSTICE LAW PROJECT<br>611 Pennsylvania Ave. SE #337<br>Washington, DC 20003 |

***ATTORNEYS FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 7, 2025 to counsel of record via the Court's ECF System.

*/s/ Radu A. Lelutiu*
Radu A. Lelutiu

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiffs inquired of counsel for Noam Shazeer and Daniel De Freitas whether they would agree to participate in jurisdictional discovery. Plaintiffs understand that Shazeer and De Freitas oppose such discovery.

*/s/ Radu A. Lelutiu*
Radu A. Lelutiu
